**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ANNE-MARIEKE WOLFE, M.D.          )
                                 )
                    Plaintiff,   )
                                 )
v.                               )          Case No. 07-1406-DWB
                                 )
ADVANCE INSURANCE                )
COMPANY OF KANSAS,               )
                                 )
                    Defendant.   )
_____ )

## MEMORANDUM AND ORDER

Before the Court are the following motions and partial motions for summary

judgment, along with corresponding responses and replies:

1.   Plaintiff's motion for partial summary judgment  and
     memorandum in support (Docs. 19, 20), defendant's response (Doc.
     27) and plaintiff's reply (Doc. 34);

2.   Defendant's motion for summary judgment and memorandum in
     support (Docs. 21, 22), plaintiff's response (Doc. 34) and
     defendant's reply (Doc. 37);

3.   Defendant's motion to strike (Doc. 28), plaintiff's response (Doc. 32)
     and defendant's reply (Doc. 37); and

4.   Plaintiff's motion to strike and memorandum in support (Docs. 31,
     33), defendant's response (Doc. 37) and plaintiff's response (Doc.
     38).

This is an action under the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.  ERISA governs employee benefit

plans.  29 U.S.C. § 1003.  Plaintiff brings her claim under 29 U.S.C. §

1132(a)(1)(B), which grants the right to bring a civil action under ERISA "to

recover benefits due to [a plan participant] under the terms of his plan, to enforce

[a plan participant's] rights under the terms of the plan, or to clarify [a plan

participant's] rights to future benefits under the terms of the plan."

## I.  MOTION TO STRIKE

First, both parties have filed motions to strike exhibits.  The court will rule

on these motions prior to setting forth the facts because a large portion of facts rest

on the admissibility of the exhibits.  Defendant moves to strike two exhibits,

affidavits by plaintiff and Carolyn Payne, on the basis that they were not part of the

administrative record.  (Doc. 28).  Plaintiff responds that the affidavits and verified

complaint should be considered on this motion for summary judgment.  (Doc. 32 at

3).

In Hall v. UNUM Life Ins. Co. of Am., 300 F.3d 1197 (10th Cir. 2002), the

Tenth Circuit set forth the standards in which to determine whether a party may

supplement the administrative record in ERISA cases that are accorded *de novo*

review.[1]   The court may supplement the record "when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." Id. at 1202.  However, "it is the unusual case in which the district court should allow supplementation of the record" and plaintiff bears the burden to establish why the court should exercise its discretion "by showing how that evidence is necessary to the district court's de novo review." Id. at 1203.

The subject affidavits set forth plaintiff's compensation history and the affiants' understanding of the quarterly payments made.  They also set forth plaintiff's work history both before and after her stroke.  Plaintiff argues that the affidavits contain factual allegations that are part of the administrative record and are important to give foundation to the administrative record.  The court agrees that most of the information set forth in the affidavits is set forth in the administrative record.  However, the affidavits are not necessary to give an "evidentiary foundation" to the administrative record and plaintiff has failed to establish that they are necessary.  The subject of a significant portion of the affidavits, which is not in the administrative record, is the explanation that the affiants believe that the

---

[1] The court has determined, *infra* at 12, that the *de novo* standard of review is applicable in this case.

3

quarterly payments are part of plaintiff's compensation and are not "bonuses" as that term is used in the plan.

The Tenth Circuit instructed that additional evidence should not be admitted unless plaintiff "can demonstrate that it could not have been submitted to the plan administrator at the time the challenged decision was made." Id. Plaintiff has failed to set forth a reason why she could not submit these affidavits to the plan administrator. The only case citation to support plaintiff's argument that "affidavits and verified complaints are pleadings that a court is entitled to review" in an ERISA case is Kent v. Sw. Bell Tel. Co., No. 98-0886, 1999 WL 325010 (N. D. Tex. May 14, 1999). In Kent, the court viewed the plaintiff's complaint in order to determine the issues before the court because the plaintiff failed to respond to the defendant's motion for summary judgment. The court did not hold that affidavits were admissible for consideration in an ERISA case. The court finds that this case can be resolved on the administrative record without the addition of the affidavits. Hall, 300 F.3d at 1203. Defendant's motion to strike (Doc. 28) is granted.

Next, plaintiff moves to strike defendant's exhibits A, B, C, E, G, H, I, M,

N, O, P and Q.[2]  (Doc. 31).  Plaintiff asserts that the exhibits are hearsay, contain

handwritten markings, do not contain the complete record, and have not been

properly authenticated.  Defendant's motion for summary judgment contained an

affidavit by William Hanna, counsel for defendant, in which he stated that the

exhibits were a part of the administrative record.  (Doc. 22 at exh. Q).  After the

filing of the motion to strike, defendant submitted a second affidavit from Kalynn

Meyer, defendant's claims specialist who reviewed plaintiff's claim, which again

authenticated the documents as part of the administrative record. (Doc. 37 at exh.

S). Meyer also confirmed that the handwriting on exhibit H was written by a

member of the Wichita Nephrology, plaintiff's employer.  The court finds that

exhibits A, B, C, E, G, H, I, M and N are part of the administrative record and

admissible for the purposes of this motion. Therefore plaintiff's motion to strike

these exhibits is denied.

Plaintiff also moves to strike exhibits O and Q.  Exhibit O is plaintiff's reply

to defendant's counterclaim and defendant cited that exhibit for the proposition

that plaintiff has failed to reimburse defendant for benefits paid.  Instead of

objecting to the fact as unsupported by admissible evidence, plaintiff responds that

---

[2] Plaintiff appears to abandon her motion to strike Exhibit P as the court cannot find a
reference to that exhibit in plaintiff's memorandum.

she has not reimbursed defendant because she is entitled to benefits.  Moreover,

plaintiff later cites exhibit O to support her denial of defendant's allegations.

Plaintiff's motion to strike this exhibit is denied.  Plaintiff's motion to strike

exhibit Q, Hanna's affidavit, is also denied.  This exhibit was offered solely to

authenticate documents and is not offered to support any facts set forth in the

motion for summary judgment.

Therefore, for the above reasons, plaintiff's motion to strike is denied (Doc.

31) and defendant's motion to strike is granted (Doc. 28).

## II.  FACTS

Plaintiff is a physician employed by Wichita Nephrology since August 1999.

The terms of plaintiff's employment were set forth as follows in her offer of

employment letter:

> Our partnership is committed to pay you $110,000 for the first
> year. In addition, we are committed to pay you $120,000 the second
> year. Your salary after this time will depend upon various levels of
> performance, productivity, and general success. . . .
> As for corporate fringe benefits, the corporation will pay your
> dues to the state and local medical societies as well as the AMA, the
> American College of Physicians, the American Society of
> Nephrology, the International Society of Nephrology, and the Renal
> Physicians' Association. The corporation will also pay your liability,
> malpractice and disability insurance, a [*sic*] well as the health
> insurance for you and your family, if needed.

(Doc. 1, exh. B).

6

Plaintiff applied for coverage under defendant's policy on August 1, 1999.
Plaintiff listed her "base salary" as $130,000, an amount that only includes her
salary from bi-weekly payments.   In 2002, plaintiff's bi-weekly salary was
$130,000.  In addition, plaintiff received four quarterly payments totaling
$114,000.  These quarterly payments were determined by the three senior
physicians at Wichita Nephrology who split the quarterly profits equally, according
to their discretion.  (Doc. 22, exh. J).  In 2003, plaintiff's bi-weekly salary was
$140,000.  Plaintiff also received four quarterly payments totaling $106, 626.51.
In 2004, plaintiff's quarterly payments equaled $149,684.33.  In April 2005,
Wichita Nephrology sent defendant a report listing plaintiff's "annual salary" as
$140,000.  Plaintiff's quarterly payments for that year were $173,509.72.

On May 24, 2005, plaintiff suffered a stroke.  Plaintiff submitted a disability
claim to defendant on August 5.  Carolyn Payne, an administrator at Wichita
Nephrology, completed the section regarding plaintiff's employment.  Payne stated
that plaintiff's salary was $140,000 annually.  (Doc. 22, exh. F).  The form
provided a section to list whether the salary included overtime, bonuses, or
commissions, but that section was left blank.  Defendant calculated plaintiff's
"monthly rate of basic earnings" as $11,666.67.  The policy's maximum benefit
was $5000.  Defendant approved plaintiff's claim for benefits on September 23.

On September 29, defendant sent a letter to Wichita Nephrology seeking to verify plaintiff's "straight basic pay only. . . do not include overtime, bonuses or extra compensation."  (Doc. 22, exh. H).  Wichita Nephrology's response was that plaintiff's straight basic pay is $140,000.

On May 24, 2006, plaintiff returned to work on a part-time basis.  Plaintiff worked a total of 20 hours a week.  Plaintiff was only able to perform 25% of her pre-disability duties.  Plaintiff saw patients in the office but could not make visits to hospitals and dialysis centers.  Plaintiff is also unable to be on call.  Wichita Nephrology determined that plaintiff's salary would be $120,000.  Plaintiff would earn this salary bi-weekly and did not get an additional quarterly payment.  In 2005, Wichita Nephrology calculated a new formula for quarterly payments which is based on productivity and profitability of the practice.[3]  Wichita Nephrology determined plaintiff's salary by taking the average compensation of the physicians in the practice, which included both the annual salary of $200,000 and the average quarterly payments of $274,500.  The total average compensation was $474,500. After determining that plaintiff performed 25% of her pre-disability duties, Wichita Nephrology set plaintiff's salary at $120,000.

---

[3] Payne's letter states that the sample formula was attached to the letter but it is not contained in the record.

Defendant paid benefits to plaintiff through February 28, 2007, but terminated those benefits by letter of March 15, 2007, after a review of plaintiff's claim and the income she received from her part-time employment.   The policy provided that benefits are available as long as plaintiff was earning less than 80% of her pre-disability income.  Plaintiff appealed her decision and defendant consulted John Hoffman, an independent certified public accountant, to determine how plaintiff's quarterly payments should be characterized.[4]  Hoffman determined that the quarterly payments were bonuses and should not be considered as part of her basic monthly earnings.  Defendant informed plaintiff that its original decision was correct.

Plaintiff filed this action seeking payments under the contract.  Defendant filed a counterclaim, seeking reimbursement for benefits paid while plaintiff was working part-time.  Both parties filed motions for summary judgment that are currently before the court.

---

[4] Plaintiff asserts that the report should not be considered because the report lacks foundation.  The court has determined, *supra*, that the report is admissible because it was part of the administrative record.  Plaintiff also objects to the report's definition of policy terms.  The court will interpret the insurance contract *de novo* and, will therefore, ascertain the definition of the terms consistent with instructions from this circuit.

## III.  MOTIONS FOR SUMMARY JUDGMENT

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

Even though the parties have filed cross-motions for summary judgment, the legal standard does not change.  See United Wats, Inc. v. Cincinnati Ins. Co., 971 F. Supp. 1375, 1382 (D. Kan. 1997).  It remains this court's sole objective to

discern whether there are any disputes of material fact, see Harrison W. Corp. v.

Gulf Oil Co., 662 F.2d 690, 692 (10th Cir. 1981), and the court will treat each

motion separately.  See Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226

F.3d 1138, 1148 (10th Cir. 2000).

### A.  Standard of Review

The Tenth Circuit has discussed the federal court's standard of review for a

denial of benefits claim under ERISA:

> A denial of benefits covered by ERISA is to be reviewed under
> a de novo standard unless the benefit plan gives the administrator or
> fiduciary discretionary authority to determine eligibility for benefits or
> to construe the terms of the plan.  If the benefit plan gives discretion
> to a plan administrator, then a decision denying benefits is typically
> reviewed under an arbitrary and capricious standard.  Such review is
> limited to determining whether the interpretation of the plan was
> reasonable and made in good faith.
>
> If, however, a plan administrator operates under an inherent or
> proven conflict of interest or there is a serious procedural irregularity
> in the administrative process, it is necessary to adjust the standard of
> review.  Effectively, this court has crafted a sliding scale approach
> where the reviewing court will always apply an arbitrary and
> capricious standard, but the court must decrease the level of deference
> given in proportion to the seriousness of the conflict.  If a plaintiff can
> prove a serious conflict of interest or the existence of a serious
> procedural irregularity, then the burden shifts to the plan administrator
> to prove the reasonableness of its decision under the arbitrary and
> capricious standard.  When the burden shifts in this manner, the plan
> administrator must demonstrate that its interpretation of the terms of
> the plan is reasonable and that its application of those terms to the
> claimant is supported by substantial evidence.

Flinders v. Workforce Stabilization Plan of Phillips Petrol. Co., 491 F.3d 1181,

1189-90 (10th Cir. 2007) (internal quotations and citations omitted); *see also*

Metropolitan Life Ins. Co. v. Glenn, 554 U.S. ___, 128 S. Ct. 2343, 2351, 171 L.

Ed.2d 299 (2008) (approving and implementing the "factor" approach to conflict of

interest allegations in ERISA cases); Johnson v. Liberty Life Assur. Co. of Boston,

No. 07-6115, 2008 WL 268290, at *4 (10th Cir. Jan. 31, 2008) (stating same).

Because defendant's plan does not give the administrator discretionary

authority to determine eligibility, the court will interpret the plan and review

defendant's factual determinations *de novo*.[5]

**B.   Application**

When deciding a motion for summary judgment under ERISA, the court

looks at the administrative record to determine the reasonableness of the decision.

Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 381 (10th Cir. 1992).

Because this case is being reviewed *de novo*, the burden of proof remains with the

---

[5] The parties both agree that a de novo standard of review is applicable in this case. (Doc. 20 at 12; Doc. 27 at 26).  Plaintiff also asserts, however, that the court should somehow lessen the deference to defendant based on the inherent conflict of interest in this case.  A *de novo* standard, however, does not provide any deference to defendant's decision and, therefore, cannot be lessened by a showing of conflict. *See* Niles v. Am. Airlines, Inc., 269 Fed. Appx. 827, 832 (10th Cir. 2008), *quoting* Hoover v. Provident Life and Accident Ins. Co., 290 F.3d 801, 808-09 (6th Cir.2002) ("When applying a de novo standard in the ERISA context, the role of the court reviewing a denial of benefits is to determine whether the administrator made a correct decision. The administrator's decision is accorded no deference or presumption of correctness.").

plaintiff to prove by a preponderance of the evidence her right to benefits within the meaning of the Plan. *See* McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1205 (10th Cir.1992) ("It is a basic rule of insurance law that the insured carries the burden of showing a covered loss has occurred."); Winchester v. Prudential Life Ins. Co. of Am., 975 F.2d 1479, 1487-88 (10th Cir.1992) (holding the appellant needed to prove by a preponderance of the evidence that her husband's death fell within the terms of the insurance policy); Niles v. American Airlines, Inc., 269 Fed.Appx. 827, 833-34 (10th Cir.2008), *citing* Alexander v. Winthrop, Stimson, Putnam and Roberts Long Term Disability Coverage, 497 F.Supp.2d 429, 434 (E.D.N.Y.2007) (finding plaintiff bears the burden of proving her entitlement to benefits.) When performing a *de novo* review of a plan administrator's decision, the court reviews the determination for correctness based on the administrative record available to the administrator at the time, unless the plaintiff has shown additional evidence is necessary to conduct adequate de novo review of a benefit decision. *See* Hall v. UNUM Life Ins. Co., 300 F.3d 1197, 1202-1203.

The issue is whether the quarterly payments made to plaintiff prior to her disability were "bonuses" as defined by the plan. Plaintiff asserts that the payments were a part of her salary and can be construed as commissions.

Defendant argues that those payments were bonuses because they were not consistent.  "Whether a contract's provisions are ambiguous is a matter of law to be determined by the court."  Hofer v. UNUM Life Ins. Co. of America, 441 F.3d 872, 880 (10th Cir. 2006) (*quoting* Flight Concepts Ltd. P'ship v. Boeing Co., 38 F.3d 1152, 1156 (10th Cir. 1994)).  In interpreting the language in the contract, the court must apply federal common law.  Miller v. Monumental Life Ins. Co., 502 F.3d 1245, 1250 (10th Cir. 2007).   Whether a term is ambiguous depends upon the court's determination of how a reasonable person in the position of the insured would interpret the term.  Hofer, 441 F.3d at 880.  *See also*, McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1202 (10th Cir. 1992) (in construing a plan, the court is to ascertain and carry out the true intention of the parties, "giving the language its common and ordinary meaning *as a reasonable person in the position of the HMO participant, not the actual participant*, would have understood the words to mean.")

The Policy provides that:

PARTIAL DISABILITY or PARTIALLY DISABLED means as a result of the sickness or injury which caused total disability, the insured is:

1. able to perform one or more, but not all, of the material and substantial duties of his own or any other occupation on a full-time or part-time basis;
or

14

2. able to perform all of the material and substantial duties of his own or any other occupation on a part-time basis.

To qualify for a partial disability benefit the insured must be earning less than 80% of his predisability earnings at the time partial disability employment begins.

(Doc. 22, exh. A at 9).

Predisability income is defined as follows:

BASIC MONTHLY EARNINGS OR PREDISABILITY INCOME means the insured's monthly rate of earnings from the employer in effect on the later of the employee's effective date or the anniversary date of the Master Policy immediately preceding the date total disability begins. Basic monthly earnings include all earnings before any reductions. It does not include bonuses, overtime pay and extra compensation other than commissions. Commissions will be averaged over the 24 month period ending on the anniversary date of the Master Policy immediately preceding the date total disability begins or for the period of employment if less than 24 months.

(Doc. 22, exh. A at 2).

The term "predisability earnings" is not defined but the definitions section instructs the reader to go to the definition of basic monthly earnings. The term basic monthly earnings is defined as "all earnings" which does not include "bonuses" but does include "commissions." Those terms, however, are not defined by the policy. In interpreting the policy in accordance with federal common law, the court must consider the common and ordinary meaning of the terms "as a reasonable person in the position of the participant would have understood the

words to mean." <u>Miller</u>, 502 F.3d at 1249; <u>McGee</u>, 953 F.2d at 1202.

First, plaintiff contends that the quarterly payments were part of her predisability earnings because they were considered a portion of her salary and they were expected.  Defendant responds that the payments were not part of her earnings because they were bonuses under the policy.  The Tenth Circuit has determined that earnings is defined as "something (as wages or dividends) earned as compensation for labor or the use of capital...."  <u>Adams v. Reliance Standard Life Ins. Co.</u>,  225 F.3d 1179, 1185  (10th Cir. 2000) (citing Webster's Third New Int'l. Dictionary 714 (1961)).  The circuit notes that the term is broad "[a]bsent any sort of modifier."  <u>Id.</u>   Presumably, plaintiff's quarterly payments would be a part of her total earnings.  The policy, however, limits the predisability earnings to those that do not include bonuses, overtime pay and extra compensation.  Therefore, if the quarterly payments fall into one of those categories, they would not be included in predisability earnings.[6]

A bonus is "something given or paid in addition to the usual or expected" or a "sum of money or the equivalent given to an employee in addition to the employee's usual compensation."  THE AMERICAN HERITAGE DICTIONARY (3d ed.

---

[6] The quarterly payments are not overtime pay, as that term is conventionally understood, and neither party is asserting this classification.  Therefore, the court will not address the possibility of quarterly payments being overtime pay.

1992).  Plaintiff asserts that the quarterly payments were actually expected and contractually agreed to.  Plaintiff's offer of employment, however, makes no commitment to pay plaintiff the quarterly payments.  The letter merely states that her future salary will be based on her productivity and performance.  That could simply be a promise that her salary would reach an amount higher than her starting salary in the future.  Moreover, the quarterly payments were entirely discretionary prior to plaintiff's disability.  Wichita Nephrology has failed to submit any kind of formula or percentage that was used to determine the quarterly payments prior to 2005.  Wichita Nephrology's administrator even stated that the payments are not "predictable in any specificity in advance."  (Doc. 22, exh. J).  Presumably, if the practice did not have a profit than the physicians would not receive any payments as there would not be any profits to share.

Moreover, it is clear, based on the record, that all parties treated plaintiff's quarterly payments as different from her salary.  Plaintiff's pay stubs signified the payments as a bonus.  Plaintiff's application for benefits stated that her salary was $140,000, not including bonuses, overtime, and extra compensation.  (Doc. 22, exh. F).  After an inquiry by defendant as to plaintiff's income, the administrator again declared that plaintiff's pay was $140,000, not including overtime, bonuses or extra compensation.  (Doc. 22, exh. H).  While plaintiff may have expected

17

some sort of payment for her contribution to the practice, that payment was never

guaranteed.[7]  The payment was based on the profitability of the entire practice and

not conditioned on plaintiff's own profitability.

A bonus is a sum of money or the equivalent given to an employee in

addition to the employee's usual compensation.  These payments clearly were

made in addition to plaintiff's base salary.  The payments fluctuate greatly from

$7,769.24 in late 2005 to $84,432.76 in early 2005.  The only information before

the court is that these payments were made based on the discretionary decisions of

three doctors.  Therefore, the court finds that these payments were bonuses under

the policy and concludes that the policy's use of the term "bonus" does not make

the policy ambiguous.

Alternatively, plaintiff argues that the payments were commissions.

However, those payments were not based on any type of identifiable formula.  A

commission is a "fee or percentage allowed to a sales representative or an agent for

services rendered."  THE AMERICAN HERITAGE DICTIONARY (3d ed. 1992).   The

quarterly payments were made behind closed doors based on the discretion of three

senior physicians.  Wichita Nephrology states that there is now a formula in place

---

[7] The court is not finding that the payments were bonuses based on the treatment of the
payments but signifies the treatment in response to plaintiff's argument that the payments were
expected.

for commissions, however, this occurred after plaintiff's disability and is not applicable in determining her predisability income.

The cases cited by plaintiff to support her position are inapposite.  In <u>Russo v. U.S. Life Ins. Co.</u>, No. 98-1224, 1999 WL 102744, * 4  (E. D. La. Feb. 26, 1999), the court found that the physician's quarterly distributions were commissions and not bonuses because the distributions were "based entirely on the business Dr. Russo brought into the clinic for that quarter."  Moreover, the application for Russo's benefits stated that his salary was in excess of $200,000, an amount that included his base salary and his quarterly distributions.  Unlike <u>Russo</u>, plaintiff and Wichita Nephrology repeatedly represented plaintiff's salary to defendant as her base amount without including the quarterly payments and plaintiff's payments were not calculated on any type of formula that would constitute  a commission.

Another case cited by plaintiff is <u>Russell v. Prudential Ins. Co. of Am.</u>,  437 F.2d 602  (5th Cir. 1971).  In that case, the plaintiff received base pay of $12,600 and a payment of $6,400 "as a percentage of the company's profits from the distribution center."  <u>Id.</u> at 606.  From this language, although the circuit does not give the reader specifics, the court assumes that the payment was based on a calculated formula of profit sharing.

Plaintiff continues to stress that the quarterly payments were a significant part of her income.  While true, that fact does not lend support to the conclusion that they were not bonuses under the policy.  As previously stated, plaintiff's payments were totally discretionary and there has been no submission by her employer of the way those payments were determined.  There is no indication that those payments were guaranteed and what amount may have been guaranteed. Therefore, the court cannot conclude that those payments are commissions as that term is understood and rather, were bonuses under the policy.

Because the court has found that the policy is not ambiguous and that the payments were bonuses, they cannot be considered as plaintiff's predisability income.  Therefore, plaintiff's current income of $120,000 is not less than 80% of her predisability income of $140,000.  Plaintiff is accordingly not entitled to continued disability benefits under the plan.[8]

## C.    Counterclaim

---

[8] It is clearly Wichita Nephrology's intent to provide plaintiff with 25% of her total predisability income, quarterly payments included.  This is clear due to the manner in which her employer figured her current part-time salary.  This result is unfortunate.  Had plaintiff's employer merely paid plaintiff 25% of the current salary of the other physicians and separately paid her 25% of the quarterly payments, this case would have resulted in a different outcome. The court cannot, however, write words into the plan which impart an intent that was wholly unexpressed when it was executed and which would thwart the congressional purpose of ERISA's disclosure provisions which are designed to ensure "that 'the individual participant knows exactly where he stands with respect to the plan.' . . . ."  McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1202 (10th Cir. 1992) (quoting Firestone Tire &n Rubber Co. v. Bruch, 489 U.S. 101, 118, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989)).

Finally, defendant seeks summary judgment on its claim of repayment of benefits during May 2006 and February 2007.  As plaintiff points out, defendant has failed to submit any evidence of payment.  Defendant has merely cited to a letter stating that payments were made.  Plaintiff has properly objected to the use of this letter as evidence of payment.  Therefore, defendant has failed to present evidence to support a finding of judgment.

## IV.    CONCLUSION

Plaintiff's motion for summary judgment is DENIED.  (Doc. 19). Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  (Doc. 21).  Defendant's motion to strike is GRANTED.  (Doc. 28). Plaintiff's motion to strike is DENIED.  (Doc. 31).

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or

argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  Any

such motion shall not exceed ten pages and shall strictly comply with the standards

enunciated by this court in <u>Comeau v. Rupp</u>.  The response to any motion for

reconsideration shall not exceed ten pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated at Wichita, Kansas on this 16th day of July, 2008.

   s/  <span style="font-variant:small-caps">Donald W. Bostwick</span>   <br>
DONALD W. BOSTWICK<br>
U.S. MAGISTRATE JUDGE
